

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Railroad Commission of Texas
Austin, Texas

Opinion No. 0-7219

Re: Questions relating to appli-
cations for certificates of
convenience and necessity
as Specialized Motor Carriers
under the applicable pro-
visions of Article 911b,
V. A. C. S.

Dear Sirs:

Your letter of May 18, 1946, makes reference to
Opinion No. 0-6916 by this Department and submits the follow-
ing additional questions pertaining to specialized motor
carriers provided for in H. B. 351 of the 47th Legislature
(Article 911b, Sec. 1(1), 5(a), 6(d) V. A. C. S.):

"Question 1: Our question, therefore, is,
Is the Commission required to hear all applica-
tions filed and determine from the proof whether
or not the property which the applicants seek
to transport comes within the class requiring
special devices or facilities or is to be trans-
ported in special motor vehicles.

"Question 2: When an application is filed for
a specialized motor carrier certificate, is the
Commission authorized to hear the proof and to
grant to the applicant the type of certificate
which the proof requires, regardless of the type
of certificate applied for.

"Question 3: In the event the Commission
has granted specialized motor carrier certifi-
cates not authorized by the law, are those cer-
tificates which are outstanding and previously
granted valid or are they void?

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"Question 4: The commodities referred to and described as 'by reason of length, width, weight, height, size or other physical characteristics', did the Legislature intend that those commodities have all of the characteristics described or is the Commission authorized to grant a certificate to transport any commodity because of its length only or because of its width only, or its weight.

"Question 5: Is a vehicle which is equipped with a device or facility mechanically constructed for either heat or cold a special motor vehicle?"

We will first briefly state certain fundamental principles in the Motor Carrier Law of Texas.

There are three types of Texas motor carriers: regular route common carrier motor carriers; irregular route common carrier specialized motor carriers; and contract carriers.

The two carriers first enumerated are common carriers and subject to essentially the same statutory requirements with this exception: regular route motor carrier applicants are subject to Section 10 of Article 911b which requires the application to contain the complete routes and regular schedules of the proposed operations; whereas, by Section 5a(d) of Article 911b, specialized motor carrier applicants are excepted from this requirement. The privilege of operating over irregular routes on irregular schedules is thus the distinguishing characteristic of the specialized carrier. The specialized motor carrier act is thus an exception to the regular route common carrier law.

Contract carriers include all carriers other than common carriers whose authority to operate is evidenced by a permit, rather than a certificate of convenience and necessity. Contract carriers do not serve the public generally and the requirements of the law are somewhat less comprehensive with reference to them. The chief purpose of their regulation is to prevent impairment of common carriers who serve all the public.

The regular route motor carrier operating as a common carrier for the general public, and serving that public by fixed routes and fixed schedules, represents the basic factor in the legislative plan for an orderly and fully

Railroad Commission
Page 2

public-serving motor transportation system in Texas. The specialized motor carrier was created by the Legislature as a common carrier to perform services on irregular routes and schedules in relation to specified special commodities. In the case of neither carrier is the Commission authorized to grant operating authority except within the provisions of the applicable Texas statutes.

Specifically with reference to specialized motor carriers, the Commission has no jurisdiction to act upon an application for a certificate of convenience and necessity authorizing motor transportation operations as such unless the application conforms with the following provision of Section 5(a) of Article 911b, V. A. C. S.:

"Sec. 5a. (a) The Commission is hereby given authority to issue upon application and hearing as provided in this Act, to those persons who desire to engage in the business of a 'specialized motor carrier,' certificates of convenience and necessity in the manner and under the terms and conditions as provided in this Act.

"....

"Sec. 5a. (d) The Commission shall have no jurisdiction to consider, set for hearing, hear, or determine any application for a certificate of convenience and necessity authorizing the operation as a 'specialized motor carrier' or any other common carrier except as provided in the preceding paragraph unless the application shall be in writing and set forth in detail the following facts:

"1. It shall contain the name and address of the applicant, who shall be the real party at interest, and the names and addresses of its officers, if any, and shall give full information concerning the financial condition and physical properties of the applicant.

"2. The commodity or commodities or class or classes of commodities which the applicant proposes to transport and the specific territory or points to, or from, or between which the applicant desires to operate, together with the description of each vehicle which the applicant intends to use.

"3. It shall be accompanied by a map, showing the territory within which, or the points to or from or between which, the applicant desires to operate, and shall contain a list of any existing transportation company or companies serving such territory, and shall point out the inadequacy of existing transportation facilities or service, and shall specify wherein additional facilities or service are required and would be secured by the granting of said application."

Pursuant to an application in proper form, the Commission is authorized to grant operating authority as a specialized motor carrier only "in the manner and under the terms and conditions as provided in this Act". Section 5a(a), Article 911b. As pertinent here, the terms and conditions specified in the specialized motor carrier act are of a twofold nature:

First, the commodities to be transported must be within the definitions and limitations of the act; and

Second, it must be established by substantial evidence that the services and facilities of the existing carriers serving the territory or any part thereof are inadequate; that there exists a public necessity for such service; and that the public convenience will be promoted by granting said application.

With the foregoing principles in mind, we now turn to the questions which you have propounded for our opinion.

Your questions 1, 2, and 3 are general in nature and are susceptible to general answer only. This Department manifestly cannot pass upon the sufficiency or legality of particular applications or certificates of convenience and necessity unless an examination and study is made of the applications or certificates involved.

Your first question is stated as follows:

"Our question, therefore, is, 'Is the Commission required to hear all applications filed and determine from the proof whether or not the property which the applicants seek to transport comes within the class requiring special devices or facilities or is to be transported in special motor vehicles."

It is our opinion that the Commission is required to hear all applications filed for certificates of convenience

and necessity authorizing operations as a specialized motor carrier if such applications are in conformity with the provisions of Section 5a of Article 911b. The Commission is further under the mandatory duty to determine from the proof whether or not the commodities which the applicant seeks to transport are within the authorization of the Specialized Motor Carrier Act. The commodities must be either within the enumeration of special commodities or within the definition of the term "property requiring specialized equipment" in Section 1(i) of Article 911b. See our Opinion No. O-6916.

Your second question is stated as follows:

"When an application is filed for a specialized motor carrier certificate, is the Commission authorized to hear the proof and to grant to the applicant the type of certificate which the proof requires, regardless of the type of certificate applied for."

As we have heretofore pointed out, the Commission is not authorized to grant any type of certificate of convenience and necessity upon an application which is insufficient under the applicable requirements of the Texas Motor Carrier Act. The Commission acquires jurisdiction to hear the application only when it meets the requirements of the applicable statutory provisions. If the application and the proof thereunder are sufficient under the statutes applicable to a particular type of authorized transportation service, the Commission would, of course, be authorized to grant such certificate. It should be pointed out, however, that proof of a need for a specialized irregular service on irregular schedules in a territory would not necessarily constitute proof of need for service on fixed schedules between fixed termini. Each application would have to be heard and determined upon the facts presented in support thereof. In our opinion, the courts of Texas will not uphold the granting of motor carrier certificates or permits by the Commission when either the application or the proof do not meet the statutory requirements for the particular type of certificate or permit.

Your third question is stated as follows:

"In the event the Commission has granted specialized motor carrier certificates not authorized by the law, are those certificates which are outstanding and previously granted valid or are they void?"

Under your statement of the above question, it must necessarily be answered that such certificates are invalid. As said by the court in Texas & Pacific Railway Company vs. Railroad Commission, 138 S. W. 2d 927, 932:

"Granting such permit without compliance with the applicable provisions of the statute render the permit invalid, under the agreed facts."

The courts of Texas have uniformly recognized that even when validly granted, motor carrier certificate holders have no vested right in the license bestowed. As said in Railroad Commission vs. Universal Transport and Distributing Company, 86 S. W. 2d 250, 252:

"Consequently appellee obtained and held no vested right to an undisturbed continuing service over the highways, as granted under its original certificate."

Moreover, the courts have recognized the power of the Commission to set aside a void or voidable motor carrier certificate or permit. It was said in Smith vs. Wald Transfer and Storage Company, 97 S. W. 2d 991:

"We are not here concerned with the power vel non of the Commission to set aside its previous order which is either void or voidable by reason of some inherent vice; nor with its power to annul or terminate a permit, prospectively, on account of changes in highway conditions and use."

Your fourth question is stated as follows:

"The commodities referred to and described as 'By reason of length, width, weight, height, size or other physical characteristics', did the Legislature intend that those commodities have all of the characteristics described or is the Commission authorized to grant a certificate to transport any commodity because of its length only or because of its width only, or its weight."

Part (4) of the definition of "property requiring specialized equipment" (Article 911b, Section I(i) reads:

"(4) Commodities which by reason of length, width, weight, height, size or other physical characteristics require the use of special devices,

facilities, or equipment for their loading,
unloading and transportation."

The definition of "specialized equipment" in the
same section is also pertinent, and reads:

"For the purpose of this act the term 'specialized
equipment' includes, but is not limited to, block and
tackle, hoists, cranes, windlasses, gin poles,
winches, special motor vehicles, and such other
devices as are necessary for the safe and proper
loading or unloading of property requiring specialized
equipment for the transportation and handling there-
of."

It is manifest from these definitions that the
Legislature had in mind unusual commodities which could not
be loaded, unloaded and transported in the normal manner by
normal means and hence beyond the normal capacities and
services of the ordinary motor carrier; also, that by their
nature, this property will be transported infrequently and its
transportation will not be readily adaptable to regularity
of routes and schedules. This is demonstrated by the par-
ticular physical characteristics listed and by the type of
special equipment described.

It is our opinion that it was not the Legislative
intention that any one physical characteristic listed should
serve as an exclusive criteria. Rather, that the terms were
used in a generic sense to portray the type and kind of
property the Legislature was making special provisions for.
If based upon substantial evidence, it is within the province
of the Commission to find that particular property requires
the use of special devices, facilities or equipment for load-
ing, unloading and transportation by reason of its physical
characteristics.

Your fifth question is stated as follows:

"Is a vehicle which is equipped with a device or
facility mechanically constructed for either heat
or cold a special motor vehicle?"

We refer again to the definition of "specialized
equipment" in Section 1(1) of Article 911b quoted above. It
is noted that the enumeration of loading and handling equip-
ment, and special motor vehicles, is followed by the explana-
tory and qualifying language "and such other devices as are
necessary for the proper loading or unloading of property
requiring specialized equipment for the transportation and
handling thereof." A motor vehicle must be "special" in the

Railroad Commission
Page 8

sense, therefore, that it is constructed for the purpose of loading or unloading property requiring this type of equipment in its transportation and handling.

It is thus seen that part (4) of the definition of "property requiring specialized equipment" and the definition of "specialized equipment" complement each other and are harmonious with respect to:

First, the meaning of physical characteristics-- such as would require special equipment to load, unload, and transport the property;

Second, specialized equipment--that which is necessary for the safe and proper loading and unloading of property requiring specialized equipment for its transportation and handling;

Third; commodities included--those which require specialized equipment in loading, unloading, and transportation.

It is therefore our opinion that a motor vehicle which is not "special" in any of the statutory senses mentioned would not be a "special motor vehicle" within the purview of the definition of "specialized equipment". Special devices for heat or cold in transit, for the protection of relatively small packages or commodities, do not, in our opinion, meet these necessary statutory requirements.

It is assumed under your statement of the fifth question that the mechanically constructed facility for either heat or cold does not involve or require any special devices for loading or unloading. This was the factual basis of our Opinion No. O-6916 in view of the statement in your request letter that the commodities under consideration-- frozen foods-- required specialized equipment in transit only.

The logic and soundness of the legislative purpose in the Specialized Motor Carrier Act is made apparent, we believe, after reflection upon the result of any other construction of the various terms involved. There are numerous everyday and commonplace commodities which require some particular truck body, or arrangement, or safeguard, in their transportation; for example, eggs, bottled liquids, flowers, books, ammunition, perishable products. It cannot reasonably be said that the Legislature intended that the physical characteristics of these commodities would qualify them under part 4 of the definition of "property requiring specialized

Railroad Commission
Page 9

equipment"; or that the vehicle used to transport them would be a "special motor vehicle" under the reasonable intendments of the definition of "specialized equipment;" or, that it was intended that the Commission should grant irregular route specialized motor carrier certificates for the transportation of these everyday commodities.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Zollie C. Steakley
Zollie C. Steakley
Assistant

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN

APPROVED AUG 3, 1946

FIRST ASSISTANT
ATTORNEY GENERAL

ZCS:jt